**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAUL JUNOD, an individual, and PATRICIA JUNOD, an individual,<br><br>          Plaintiffs,<br><br>   v.<br><br>DREAM HOUSE MORTGAGE COMPANY, U.S. BANK HOME MORTGAGE D/B/A AMERICA'S SERVICING COMPANY, U.S. BANK, N.A. AS TRUSTEE FOR CSMC MORTGAGE BACKED TRUST 2006-6, AND DOES 1-10, inclusive,<br><br>          Defendants. | Case No. CV 11-7035-ODW (VBKx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [25] AND GRANTING DEFENDANTS' MOTION TO EXPUNGE LIS PENDIS [26] |

## I.   INTRODUCTION

Currently before the Court are Defendants America's Servicing Company ("ASC") and U.S. Bank N.A.'s, ("U.S. Bank" and collectively, "Defendants") Motion to Dismiss Plaintiffs Paul and Patricia Junod's ("Plaintiffs") First Amended Complaint ("FAC") and Motion to Strike Lis Pendens. (Dkt. Nos. 25-26.) After careful consideration, the Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II. FACTUAL BACKGROUND

On April 27, 2006, Plaintiffs executed a promissory note in the amount of $395,000.00. The promissory note was secured by a deed of trust ("DOT") identifying Dream House Mortgage Corporation as the lender, the trustee as Stewart Title Company, and the beneficiary as Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS, acting as nominee to Dream House, substituted in NDEx West, LLC ("NDEx") as successor trustee, and assigned all beneficial interests to U.S. Bank. Plaintiffs eventually defaulted on the loan and a notice of default was recorded on March 15, 2010. Subsequently, a Notice of Trustee's Sale was finalized and recorded on June 21 and June 30, 2011 respectively.

Plaintiffs allege generally that the foreclosure proceedings were invalid largely due to Defendant's role leading up to the proceedings. Namely, Plaintiffs aver that in California, there can be no beneficial ownership in the DOT as it is nothing more than security for the Promissory Note. Plaintiffs, as a result, allege that MERS could not transfer any interest in the DOT to another. Accordingly, by engaging in a series of recordings and assignments, Plaintiffs contend that Defendants engaged in unlawful mortgage transactions.

Based on the foregoing, Plaintiffs instituted this action on August 25, 2011. Plaintiffs' FAC asserts the following claims: (1) Declaratory Relief; (2) Violation of 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (3) Violation of 15 U.S.C. § 1641(g) ("TILA"); (4) Violation of 15 U.S.C. § 2605 *et seq.* ("RESPA"); (5) Violation of 12 U.S.C. 17200 *et seq.* ("UCL"); (6) Wrongful Foreclosure and To Set Aside Trustee's Sale; (7) Void or Cancel Trustee's Deed Upon Sale; (8) Breach of Contract; and (9) Breach of the Implied Covenant of Good Faith and Fair Dealing. At this time, Defendants move to dismiss Plaintiffs' Complaint in its entirety.

## III. LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule

8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 554, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, to overcome a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation and citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (internal quotation and citation omitted).

When considering a 12(b)(6) motion, a court is generally limited to considering materials within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *See Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) (citing *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, the Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

**IV. DISCUSSION**

    **A. PLAINTIFFS' SECOND CLAIM - FDCPA**

Plaintiffs' second claim pursuant to FDCPA fails because Defendant U.S. Bank

is not a debt collector as the statute defines. "The [FDCPA] prohibits debt collector[s] from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). To be liable for a violation of the FDCPA, a defendant must, as a threshold matter, be a "debt collector" within the meaning of those acts. *Heintz*, 514 U.S. at 294. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (2009).

In this case, Plaintiffs allege that "Defendant U.S. Bank is a debt collector pursuant to the [ ] FDCPA." (FAC ¶ 61.) Such bare allegations are not sufficient and courts have rejected similar conclusory statements pertaining to FDCPA claims. *See e.g., Martinez v. Quality Loan Serv. Corp.*, No. CV 08-07767, 2009 WL 586725, at *8-9 (C.D. Cal. Feb. 10, 2009). For example, additional facts directed to the debt collecting activity may be necessary to show that U.S. Bank conducted in such activities. *See* 15 U.S.C. § 1692a(5) ("debt collector" is a person whose business' primary purpose is the collection of debt or a person who "regularly" engages in debt collection activity). Without these facts, merely alleging conclusory statements that U.S. Bank is a "debt collector" will not suffice. *Twombley*, 550 U.S. at 555. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' second claim.

        **B.**    **PLAINTIFFS' THIRD CLAIM - TILA**

Plaintiffs do not dispute that their TILA claim is time barred. Rather, Plaintiffs argue that equitable estoppel and equitable tolling apply tolling TILA's statute of limitations. Plaintiffs, however, have not demonstrated a basis for equitable tolling or equitable estoppel. "[Courts] apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193

(9th Cir. 2001)). In addition, equitable estoppel "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Cervantes*, 656 F. 3d at 1046 (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)).

Here, Plaintiffs allegation that "[they] could not have reasonably known of a TILA violation because Defendants fraudulently concealed the fact[s] . . ." is not sufficient. (FAC ¶ 93.) Specifically, Plaintiffs fail to allege that despite due diligence they could not have discovered Defendants' violations. In addition, Plaintiffs fail to establish that the alleged concealment of facts is "above and beyond the wrongdoing" that forms the basis for their TILA claim. Accordingly, equitable tolling and estoppel need not apply, and the Court **GRANTS** Defendants' Motion.[1]

### C. PLAINTIFFS' FOURTH CLAIM - RESPA

Plaintiffs contend that Defendants violated RESPA, 12 U.S.C. § 2605, by failing to respond to Plaintiffs' alleged Qualified Written Request ("QWR"). To begin, Defendants argue that this claim is time-barred. A three year statute of limitations is afforded for violations of § 2605, as here, involving disclosure of loan servicing. 12 U.S.C. § 2614. In this case, because the alleged violation occurred following Plaintiffs' August 16, 2011 letter ("August 16, 2011 letter" or the "alleged QWR"), this claim is not time-barred.

Next, as Defendants argue, Plaintiffs' August 16, 2011 letter does not qualify as a QWR. *See* 12 U.S.C. 2605(e)(1)(B). RESPA places a duty on loan servicers to respond to borrower inquiries relating to information about the borrower's loan. 12 U.S.C. § 2605(e). This duty is triggered when the servicer receives a "qualified written request" from a borrower. 12 U.S.C. § 2605(e)(1)(A). After receiving a QWR, a servicer must acknowledge its receipt within twenty days and respond to the inquiries within sixty days.

---

[1] Contrary to Defendants' argument, Plaintiffs are not required to allege actual damages to assert a TILA claim. Rather, if found liable, Defendants will be liable in an amount equal to the sum of any actual damage sustained by [plaintiff] as a result of the failure, 15 U.S.C. § 1640(a)(1); statutory damages limited to twice the amount of any finance charge in connection with the transaction but not less than $400 or greater than $4,000, *id*. § 1640(a)(2)(A)(i), (iv); and attorney's fees. *Id*. § 1640(a)(1)(3).

5

12 U.S.C. § 2605(e)(1), (2). For purposes of RESPA, a QWR is defined as: a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that - (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

Here, Plaintiffs' alleged QWR requests the following:

(1) a true and present copy of the promissory note and deed of trust;

(2) a complete life of loan transactional history;

(3) the Transaction Codes for the software platform of the Servicer;

(4) the Code definition in plain English;

(5) the Key Loan Transaction history, bankruptcy work sheet (if any), or any summary of all of the accounts in an XL spreadsheet format;

(6) the MERS Milestone Reports and the Edgar website address for the Pooling and Servicing Agreement, Prospectus and Prospectus Supplement;

(7) the name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note;

(8) copies of all collection notes and communication files;

(9) an itemized statement of the amount needed to fully reinstate loan;

(10) all communications with any non-lawyer third party providers; and

(11) all Form P-309 screen shots of all system accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, debtor suspense accounts) associated with the loan. (FAC, Exh. C.)

This all encompassing request for documents and records are not the type of information

RESPA contemplates. Particularly, Defendants aver that the alleged QWR does not request information directed to the servicing of a loan. *See* 12 U.S.C. § 2605(e)(1)(A). The Court must agree.

Under RESPA, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). It is apparent from the alleged QWR that Plaintiffs' request was unrelated to the servicing of the loan. Rather, the alleged QWR contains largely requests for documents relating to the original loan transaction and its subsequent history. Hence, the requests as a whole seeks information on the validity of the loan and mortgage documents. Such requests do not fall within the confines of RESPA. *See, e.g.*, *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (dismissing the plaintiff's RESPA claim with prejudice after observing that the requirement "[t]hat a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (dismissing a RESPA claim because "[a]ccording to the allegations . . ., the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the [ ] account balance.").

Moreover, § 2605 only requires loan servicers to respond to a proper QWR by correcting the account discrepancy, explaining why the account is correct, or if the information is unavailable, by providing contact information for someone who can assist the borrower with her inquiry. 12 U.S.C. §§ 2605(e)(2)(A)-(C). Thus, even if Plaintiffs' August 16, 2011 letter was otherwise a proper QWR, their request exceeds the scope of information Defendants were required to provide in response. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' RESPA claim.

### D. PLAINTIFFS' FIFTH CLAIM - VIOLATION OF THE BUSINESS AND PROFESSIONS CODE

Plaintiffs' UCL claim fails. "The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247 (Ct. App. 2010) (internal citations omitted). "The California Supreme Court held that the UCL establishes three varieties of unfair competition-acts or practices which are [1] unlawful, or [2] unfair, or [3] fraudulent." *Id*. at 50. Since the UCL is written in the disjunctive, a business act or practice may be alleged to be all or any of the three varieties. *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544 (Ct. App. 2007). In order to state a claim under the unlawful prong, a plaintiff must allege facts that show that anything that can reasonably be characterized as a business practice is also a violation of law. *California v. McKale*, 25 Cal.3d 626, 632 (1979). To show a violation under the fraudulent prong, a plaintiff must show that members of the public are likely to be deceived by the practice. *Weinstat v. Dentsply Int'l, Inc*., 180 Cal. App. 4th 1213 (Ct. App. 2010). "A plaintiff's burden thus is to demonstrate that the representations or nondisclosures in question would likely be misleading to a reasonable consumer." *Id*. Finally, under the unfair prong, three different tests are currently used by California courts to determine if a practice is unfair. *Drum*, 106 Cal.Rptr.3d at 53.

In this case, Plaintiff fails to plead a UCL claim under any theory. First, the "unlawful" prong of the UCL requires an underlying violation of a state or federal statute or common law. As discussed above, the Court has granted Defendants' Motion as to Plaintiffs' TILA, FDCPA, and RESPA claims. As a result, these statutes cannot form the basis of Plaintiffs' UCL claim as alleged in the FAC. In addition, alleging violations of a laundry list of penal and civil codes, without more, is not sufficient to maintain a plausible claim. *Iqbal*, 129 S. Ct. at 1949. Ultimately, conclusory statements suggesting that Defendants are in violation of certain statutes are not sufficient.

Next, Plaintiffs do not adequately plead an independent UCL claim for unfair or

fraudulent business practices because the FAC fails to alleges facts to support any identifiable wrongdoing by specific Defendants. Likewise, Plaintiffs' mere conclusory recitation of the elements of these claims do not give proper notice to the respective Defendants as to the alleged misconduct. Accordingly, Plaintiffs' UCL claim cannot survive Defendants' Motion at this time. Thus, the Court **GRANTS** Defendants' Motion as to this claim.

### E.  PLAINTIFFS' SIXTH AND SEVENTH CLAIMS - WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE AND TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE

Plaintiffs' sixth and seventh claims fail because Defendants had authority to foreclose as the beneficiaries and trustees under the deed of trust. As an initial matter, the Court finds Plaintiffs' contention that Defendants were sham beneficiaries which, "as a necessary consequence, [would result in no] party ha[ving] the power to foreclose" unpersuasive. *Cervantes*, 656 F.3d at 1044. Generally, "challenge[s] to the validity of the Notice of Default and Corporation Assignment of Deed of Trust based on MERS' authority as the beneficiary under the deed of trust has been rejected by courts throughout California." *Cerecedes v. U.S. Bankcorp*, No. CV 11-219 CAS (FMOx) (C.D. Cal. July 11, 2011); *see also Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1098-99 (E.D. Cal. 2010) ("There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure."). In addition, contrary to Plaintiffs' contentions, California Civil Code § 2924 allows "the trustee, mortgagee, or beneficiary" to file and record a notice of default and begin the foreclosure process. Likewise, California Civil Code § 2934 authorizes the beneficiary to substitute the trustee. Moreover, Plaintiffs expressly agreed to authorize MERS to act as beneficiary when they signed the DOT. Accordingly, Plaintiff's contention that MERS and its subsequent assignees lacked authority to institute foreclosure is rejected. *See Gomes v. Mortg. Elec. Reg. Sys.*, 192 Cal. App. 4th 1149, 1158 (Ct. App. 2011) ( "[B]y entering into the deed of trust, [plaintiff] agreed that MERS

had the authority to initiate a foreclosure."); *Germon v. BAC Home Loans Serv.*, L.P., 2011 WL 719591, *2 (S.D. Cal. Feb.22, 2011) (holding that the language of § 2924 grants MERS the power "to assign its beneficial interest under the deed of trust"). Specifically, the assignment and substitution of trustee from MERS to U.S. Bank National Association and NDEx West, LLC were lawful and Defendants had authority to initiate the foreclosure sale in this case. Hence, the Court **GRANTS** Defendants' Motion as to Plaintiffs' sixth and seventh claims.

### F.  PLAINTIFFS' EIGHTH CLAIM - BREACH OF CONTRACT

Plaintiffs allege that Defendants breached their agreement with Plaintiffs when they failed to apply Plaintiffs' mortgage payments as required by the terms of Section 2 of the deed of trust. Plaintiffs, however, do not state an actionable claim. Specifically, allegations that Defendants breached a certain section of the deed of trust are conclusory devoid of facts supporting such conclusions. In effect, these allegations are mere formulaic recitations of the elements of a breach of contract claim. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' breach of contract claim.

### G.  PLAINTIFFS' NINTH CLAIM - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Under California law, a claim for breach of the implied covenant of good faith and fair dealing is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract." *Gomez v. Wells Fargo Home Mortg.*, 2011 WL 5834949, at *8 (N.D.Cal. Nov. 21, 2011) (internal marks and citations omitted). Plaintiff alleges Defendants breached their duty of good faith by unfairly interfering with Plaintiff's right to receive the benefits of the contract, including holding equity in their Property, and by improperly assessing and applying their mortgage payments according to the deed of trust. Plaintiff's claims, however, are conclusory and unsubstantiated by factual allegations that describe the conduct at issue. To survive a motion to dismiss, Plaintiff must identify the conduct that has frustrated her right to enjoy

the benefit of the contract. *Gomez,* 2011 WL 5834949, at *8. Because Plaintiff has not done so, the Court **GRANTS** Defendants' Motion as to Plaintiffs' ninth claim.

### H.     PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF

Plaintiffs' request for declaratory relief under 28 U.S.C. §§ 2201 and 2202 is subject to dismissal because Plaintiff has not sufficiently pled an underlying controversy between the parties. *See American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994). The Declaratory Judgment Act ("DJA") is merely a procedural statute and does not provide an independent theory for recovery. *Team Enterprises, LLC v. Western Inv. Real Estate Trust*, 721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) (citations omitted). Rather, where the plaintiff has stated an underlying claim for relief, the DJA merely offers the plaintiff an additional remedy. *Id*. Accordingly, where as here, the plaintiff has not adequately pled an underlying claim for relief, her declaratory relief claim cannot stand alone, and is therefore subject to dismissal. *See id*. ("declaratory relief claim falls with the demise of . . . other claims and the absence of a cognizable justiciable controversy"). Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' request for declaratory relief.

## V.     MOTION TO EXPUNGE LIS PENDENS

"A lis pendens is recorded by someone asserting a real property claim, to give notice that a lawsuit has been filed which may, if that person prevails, affect title to or possession of the real property described in the notice." *Federal Deposit Ins. Corp. v. Charlton*, 17 Cal. App. 4th 1066, 1069 (Ct. App. 1993) (citing Cal. Code Civ. Proc. §§ 405.2, 405.4, 405.20). "Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged." *BGJ Assocs., LLC v. Superior Court of Los Angeles*, 75 Cal. App. 4th 952, 967 (Ct. App. 1999). A lis pendens is a provisional remedy which should be applied narrowly. *Id*.

A court must expunge a lis pendens upon a finding that the claimant failed to establish by a preponderance of the evidence the probable validity of the real property

claim. Cal Code Civ. Proc. § 405.32. "It is the party who opposes the expungement of a notice of lis pendens, rather than the party seeking expungement, who bears the burden of proof at the expungement hearing." *Malcolm v. Superior Court*, 29 Cal. 3d 518, 525-26 (1981).

Although the court postpones a final determination of the parties' rights under the Deed of Trust until there has been an opportunity to submit further evidence, the court finds that Plaintiffs have failed to meet their burden of proving the "probable validity" of their real property claim. Cal Code Civ. Proc. § 405.32. Plaintiffs have not pled a tender of their debt obligations, and judicially noticeable evidence suggests that they defaulted on their loan. Further, the court is not persuaded by the unsubstantiated, conclusory challenge to the authenticity of U.S. Bank's chain of title documents that Plaintiffs are more likely than not to prevail in showing that U.S. Bank is not the proper beneficiary under the deed of trust. *See Wolf v. Wells Fargo Bank, N.A.*, 2011 WL 4595012, at \*2 (N.D. Cal. Oct. 4, 2011) ("Probable validity 'means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim.' ") (citing Cal. Code Civ. Proc. § 405.3). Accordingly, the Court **GRANTS** the motion to expunge lis pendens.

Because Defendants have prevailed on its expungement motion, it is entitled to reasonable attorney's fees and costs "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." Cal. Civ. Proc. Code § 405.38. On the record before the court, Plaintiffs' claim does not fall within the exception provided by section 405.38. *Compare Cruz v. Wachovia Mortg.*, 775 F. Supp. 2d 1188, 1191 (C.D. Cal.2011) (attorney's fees award not justified where underlying allegations of lender abuse and non-disclosure by defendant were "never . . . disproved" but were dismissed due to a technicality). Accordingly, the Court **DENIES** Defendants' Motion for attorneys' fees and costs.

## VI. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss. Plaintiffs may file a Second Amended Complaint within fourteen (14) days of this order, if they can, in good faith, allege facts supporting their claims. In addition, the Court **GRANTS** Defendants' Motion to Expunge Lis Pendens and DENIES Defendants' Request for Attorneys' Fees.

IT IS SO ORDERED.

January 5, 2012

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE